BARBARA REALTY COMPANY *et al. vs.* ZONING BOARD OF

REVIEW OF THE CITY OF CRANSTON.

JANUARY 10, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

CONDON, J. This is a petition for certiorari to review the

action of the zoning board of review of the city of Cranston in granting an application for an exception or variance to permit the use of a certain lot of land in a residence A district for a motor lodge. We issued the writ and in compliance therewith the board has made due return of its records pertaining to such application for our inspection.

The petitioners were remonstrants at the hearing before the board and objected to the granting of the application for numerous reasons. They also challenged the right of one member of the board, William N. Harris, to hear the case. This challenge was based on the ground that he had publicly made certain statements which clearly indicated he had formed an opinion concerning the subject matter. The petitioners contended that such statements showed he was prejudiced and therefore was disqualified.

After certain evidence of such alleged disqualification was presented, petitioners moved that the board disqualify Mr. Harris. This motion was denied and Mr. Harris continued to participate in the hearing to final decision. The petitioners allege in their petition that they were thereby deprived of a fair hearing in that the board was not constituted of five qualified members as required by statute. General laws 1938, chapter 342, §8.

It appears from the evidence that in August or September 1955 Harris had talked with one of the petitioners, Antonio Mancini, about a proposed change in the zoning ordinance that would permit the building of a motor lodge in the district where Mancini had his home. At that time an amendment to the ordinance that would accomplish such purpose was pending before the city council. Mancini testified that he said to Harris: "We are going to object to it." Harris asked: "Who is going to object to it?" Mancini replied: "Myself and all of the neighbors." Harris then said: "What difference does it make, we are going to shove it down your throats anyway." Mancini testified further that there was no question in his mind as to how Harris

felt about the matter "because we went into it extensively after. It got kind of hot and heavy and I left." He also testified that he had said to Harris: "You would object to it if you lived there," and Harris replied: "I don't live there and I don't care." This conversation took place in the presence of Antonio Meschino in his market known as Food Town on Park avenue in Cranston. Subsequently the proposed amendment to the ordinance was rejected by the city council, and thereafter the instant application was filed with the zoning board.

The petitioners' counsel did not immediately move to disqualify Harris but first called Meschino, who corroborated Mancini's testimony. Harris was then interrogated concerning this conversation and he admitted it in substance but not in the exact words as testified. He further stated that he was not for or against the motel and knew nothing about it. A long colloquy between the city solicitor and petitioners' counsel ensued at this point which finally ended with the latter moving to disqualify Harris. The board thereupon denied the motion and proceeded with the hearing.

The petitioners contend that the board erred because the evidence showed that Harris had prejudged the matter before it and, therefore, could not render a fair and impartial decision. The city solicitor contended that such evidence was not sufficient to warrant the board in granting the motion and thereby destroying the hearing which was then in its second night. He further contended that petitioners should not prevail in any event because their counsel had not pressed the matter of Harris' disqualification with reasonable diligence after they had become aware of the statements which he had made to Mancini. As to this latter contention, petitioners' counsel replied that they acted promptly after they became assured of Mancini's corroboration by the independent testimony of Meschino and by the admission by Harris.

We have carefully considered these contentions and we are of the opinion that petitioners acted with reasonable diligence, since they were justified in reserving their motion until they could show by corroborative evidence that Harris had actually made the statements imputed to him by Mancini. The question in this case is whether those statements are sufficiently grave to justify petitioners' claim that Harris could not be deemed impartial. We think they are.

Superficially considered it may be that the statements in and of themselves do not conclusively show that Harris had prejudged the case. The city solicitor argues in substance that they should be overlooked as more or less loose talk or idle banter between friends at a time when the application was not pending before the board. The difficulty with thus dismissing petitioners' motion is that members of a zoning board are vested with a substantial measure of quasi-judicial power under the local law regulating the use of land within their jurisdiction. In the exercise of that power they are called upon to perform the always delicate duty, as in the case at bar, of deciding whether or not a landowner may be granted a special exemption or privilege from compliance with the law which binds all others who own land in the same district. Such a power must be exercised with strict impartiality or there will inevitably result a loss of public confidence in the policy of the zoning ordinance and in the integrity of the officials charged with the responsibility of administering it. A member of a zoning board, therefore, should not in any matter affecting the granting or denying of applications for exceptions or variances say or do anything which would furnish a basis for raising an inference that he was biased in favor of one side or the other.

In the instant case we think that in September 1955 Mr. Harris wittingly or unwittingly so expressed an opinion publicly on a zoning matter, which ultimately came before

him for judgment in the following January, as to destroy public confidence in his impartiality. It seems to us that Mr. Harris' blunt statements to Mr. Mancini were naturally calculated to arouse in these petitioners an ineradicable conviction that he had prejudged their case. No matter how innocently the statements may have been made, Mancini and his fellow remonstrants would probably always believe that the board's decision overruling their remonstrances was biased and prejudiced because of Mr. Harris' participation therein.

In the circumstances we are convinced that it will be more in keeping with the high canons of justice and fair play if he is disqualified and the board is ordered to hear the application *de novo* with one of the alternate members sitting in his place. Such a rehearing will tend to maintain public confidence in the administration of the zoning ordinance.

The petitioners also raised a question of the qualification of Vincent Dimitri, chairman of the board, because his brother is the uncle by marriage of the attorney for the applicants. There is no merit in such objection and the board quite properly overruled it.

The petition for certiorari is granted, the decision of the respondent board is quashed, and the records in the case which have been certified to this court are ordered returned to the board with our decision endorsed thereon.

*Benedetto A. Cerilli, Francis Castrovillari,* for petitioners.

*Joseph V. Cavanagh,* City Solicitor, for respondent.