86 P.3d 494

David EACRET and Barbara M. Eacret, husband and wife, William M. Berg and Melinda M. Cameron, husband and wife, Petitioners–Respondents,

v.

BONNER COUNTY, a political subdivision of the State of Idaho, acting through the Bonner County Board of Commissioners, Respondent,

and

Fred Harris and Ron Harris, Intervenors–Appellants.

David Eacret and Barbara M. Eacret, husband and wife, William M. Berg and Melinda M. Cameron, husband and wife, Petitioners–Respondents,

v.

Bonner County, a political subdivision of the State of Idaho, acting through the Bonner County Board of Commissioners, in their official capacities, Respondent–Appellant,

and

Fred Harris and Ron Harris, Intervenors–Respondents.

Nos. 28092, 29137.

Supreme Court of Idaho, Coeur d'Alene, October 2003 Term.

Feb. 27, 2004.

782

Ramsden & Lyons, Coeur d'Alene, for appellants Harris in # 28092 and respondents Harris in # 29137. Michael E. Ramsden argued.

Finney & Finney, Sandpoint, for appellants Bonner County, et al, in # 29137. Gary A. Finney argued.

Lukins & Annis, Coeur d'Alene, for respondents Eacrets, Berg & Cameron in # 28092 and # 29137. Mischelle R. Fulgham and William M. Berg argued.

BURDICK, Justice.

## FACTUAL AND PROCEDURAL BACKGROUND

Fred and Ron Harris (Harris) first applied to Bonner County for a variance from the setback requirements after they had begun construction of a boathouse on the shore of Lake Pend Oreille. In February 2000, the denial of the variance by the Planning and Zoning Commission became final, after the County Commissioners dismissed the appeal for failure to state lawful grounds upon which the appeal could be based. Bonner County Revised Code (BCRC) § 12–451(d)(1).

Harris filed a second application for a variance regarding the boathouse in August of 2000. The Planning and Zoning Commission again denied the application and issued its findings and conclusions. Harris filed a notice setting forth grounds for appeal under BCRC § 12–451(c). Upon presentation of the appeal by the planning director, the Board of County Commissioners (the Board) accepted the appeal, determined to hear the appeal de novo, and set the hearing date for January 4, 2001, before a change in the Board was scheduled to take place. At the January 4, 2001, hearing, the Board granted the variance by a vote of two to one and thereafter issued its findings and conclusions. The Board reached exactly the opposite conclusion as the Planning and Zoning Commission on each of the five standards applicable for a variance under BCRC § 12–2010(d)(1) through (5).

David and Barbara Eacret, ("the Eacrets"), adjoining landowners to the Harris property and "affected persons" under I.C. § 67–6521, appealed the award by filing a petition for judicial review to the district court. In their petition, they described the actions of the County in the granting of the variance, which they claimed denied them their due process rights. They contended that the Commissioners encouraged Harris to reapply for a zoning variance that had been previously denied. Allegedly, the Commissioners improperly discussed the Harris variance application at their regular business meeting, without notice to interested parties

or an opportunity to be heard; they decided in another business meeting to rehear the Harris variance application; they visited the site of the boathouse without notice; and they engaged in *ex parte* communications with Harris. The Eacrets also asserted that the Commissioners had expedited the rehearing date in order that the Harris variance application could be ruled on before the terms of Commissioners Mueller and Van-Stone expired and there were new members on the Board. The Eacrets claimed that the notice of hearing for the January 4, 2001, hearing contained an erroneous description of the parcel(s) in question and finally, that the granting of the variance by the Board was not supported by specific findings and conclusions.

By order dated November 20, 2001, the district court vacated the issuance of the variance and remanded the matter to the Board, which no longer included Commissioners Mueller and Van Stone. The district court found that a procedural error existed in the identification of the parcel(s) to which the variance would apply. Further, drawing inferences from a statement made by Commissioner Mueller at the Board's August 31, 2000, business meeting, the district court found that Commissioner Mueller had reached his decision on the variance prior to the hearing on the appeal and based upon evidence outside of the record.[1] Harris filed an appeal from the district court's memorandum decision.

Although the Eacrets had requested costs and attorney fees in their petition for judicial review, the district court reserved its decision on the same until after the remand. The Eacrets renewed their request for fees as against the County and Harris on April 8, 2002, and they filed a motion for entry of judgment subsequent to the Board's denial of the variance on remand. The district court considered the parties' arguments at a hearing and on June 14, 2002, issued an order finding the Eacrets to be the prevailing party and entitled to an award of fees and costs as against the County. The district court determined that the County had acted without a

reasonable basis in fact or law in granting the variance to Harris, thus satisfying the criteria under I.C. § 12–117. Relying on the language of the statute, the district court authorized the award of attorney fees to include both the district court proceedings and the administrative proceedings that occurred after the offending statements of Commissioner Mueller at the August 31, 2000, Board meeting, if they were regarding the Harris variance. The Eacrets submitted their memorandum of costs and attorney fees to the district court on June 28, 2002.

On October 24, 2002, the district court entered judgment in favor of the Eacrets. The Court entered a separate order awarding fees and costs exclusively against the County, as provided by I.C. § 12–117. The County timely appealed from the order and judgment.

Harris's appeal from the district court's decision on review of the Board's decision granting the variance has been consolidated with the County's appeal from the district court's order awarding fees and costs against it, for argument before the Idaho Supreme Court.

Harris argues that the district court erred in finding that Commissioner Mueller's statements at the January 4, 2001, hearing evidenced a predetermination of issues surrounding the variance request as well as information beyond the record that was exclusively in Commissioner Mueller's possession. Harris requests attorney fees on appeal pursuant to I.C. § 12–117. The issues raised by the County relate to the district court's award of attorney fees, expert witness fees, and other costs to the Eacrets. The County contests the timeliness of the Eacrets' memorandum of costs, the district court's prevailing party determination and the extent of the award. The Eacrets request attorney fees on appeal.

## I.

### A. Standard of Review.

The provision of the Local Land Use Planning Act (LLUPA) governing variances pro-

---

1. The district court took judicial notice of the Board's decision on remand. The Board denied the variance application, consistent with the earlier decision of the Planning and Zoning Com-

mission. Harris sought review of the Board's decision by the district court, which matter remains pending.

vides in part that a variance "may be granted to an applicant only upon a showing of undue hardship because of characteristics of the site and that the variance is not in conflict with the public interest." I.C. § 67–6516. "An affected person aggrieved by a decision may within twenty-eight days after all remedies have been exhausted ... seek judicial review as provided by chapter 52, title 67, Idaho Code." I.C. § 67–6521(1)(d). Judicial review shall be conducted by the court without a jury, with the review of disputed issues of fact to be confined to the agency record. I.C. § 67–5277.

In a subsequent appeal from a district court's decision in which the district court was acting in its appellate capacity under the Administrative Procedure Act (APA), the Supreme Court reviews the agency record independently of the district court's decision. *Payette River Prop. Owners Ass'n, v. Board of Comm'rs of Valley County*, 132 Idaho 551, 554, 976 P.2d 477, 480 (1999); *Ferguson v. Board of County Comm'rs for Ada County*, 110 Idaho 785, 718 P.2d 1223 (1986). As to the weight of the evidence on questions of fact, this Court will not substitute its judgment for that of the zoning agency. I.C. § 67–5279(1); *Lamar Corp. v. City of Twin Falls*, 133 Idaho 36, 39, 981 P.2d 1146, 1149 (1999).

The Court shall affirm the zoning agency's action unless the Court finds that the agency's findings, inferences, conclusions or decisions are: "(a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; and (e) arbitrary, capricious, or an abuse of discretion." I.C. § 67–5279(3). The party attacking a zoning board's action must first illustrate that the board erred in a manner specified therein and must then show that a substantial right of the party has been prejudiced. *Payette River Prop. Owners Ass'n, supra.*

### B. Bias of Decision maker.

The Due Process Clause entitles a person to an impartial and disinterested tribunal. *Marshall v. Jerrico, Inc.*, 446 U.S.

238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). This requirement applies not only to courts, but also to state administrative agencies charged with applying eligibility criteria for licenses. *Stivers v. Pierce*, 71 F.3d 732 (9th Cir.1995). Decisions by a zoning board applying general rules or specific policies to specific individuals, interests or situations, are quasi-judicial in nature and subject to due process constraints. *Cooper v. Board of County Comm'rs of Ada County*, 101 Idaho 407, 411, 614 P.2d 947, 951 (1980). *See also Comer v. County of Twin Falls*, 130 Idaho 433, 942 P.2d 557 (1997) (due process requirements apply to proceedings of local land use boards, including decisions on applications for conditional land use permits). Bias of a board member renders his participation in the due process hearing constitutionally unacceptable, *Johnson v. Bonner County School Dist. No. 82*, 126 Idaho 490, 887 P.2d 35 (1994), and the reviewing court must determine the effect of the conflicted vote in order to assure impartial decision-making and to avoid the appearance of impropriety. *Floyd v. Board of Comm'rs of Bonneville County*, 137 Idaho 718, 726, 52 P.3d 863, 871 (2002).

We begin with a review of the district court's findings regarding the conduct of Commissioner Mueller that precipitated the remand of the matter of the Harris variance to the Board of Commissioners. In this appeal, Harris disputes the district court's determination that Commissioner Mueller had made up his mind on the variance application prior to the *de novo* hearing before the Board and that Mueller's decision was based in part on evidence that was outside of the record. Harris argues that the statements from which the district court inferred that Mueller had prejudged the controversy were but "a fatalistic acknowledgement that the process will result in the granting of a variance." Harris also asserts that there was no direct evidence of bias on the part of Commissioner Mueller to sustain a conflict of interest claim.

The Board held a regular business meeting on August 31, 2000, where the matter of set back requirements for boathouses on Bottle Bay was discussed as a "new business" agen-

da item. The transcript from the meeting reflects that Commissioner Mueller had a personal interest in promoting a blanket variance to allow the people on Bottle Bay to build their boathouses, "as everybody else in Bottle Bay has been doing for fifty years." Without specifically referring to the Harris variance, Commissioner Mueller alluded to a pending variance application:

I can't tell you how much it is costing him through the County. He's went (sic) through one variance, now he's going through the second variance, O.K. We turned the first one down, you guys did. Uh, the helper he has, the engineer, he's about $5,000 into it right now. In the end, it is going to get approved, and all he is doing is spending tons of dollars.

The comments elicited an admonishment from the attorney for the Board.

At the duly noticed public hearing of January 4, 2001, the Board took testimony anew on the Harris's variance application. The hearing began with a disclosure by Commissioner Mueller that he had talked to the Harrises a couple of times and that he had driven by the site of the boathouse for which the variance was being sought. He disclaimed any conflict of interest. Commissioner Van Stone indicated that he "did see the boathouse by accident" while he was looking at another boathouse nearby. Commissioner Mueller commented in his opening remarks that he believed that if the Planning and Zoning Commission had known all the facts, "they would have given us a recommendation to pass this." Although this initial statement was made in the context of justifying the Board's decision to review the decision of the Planning and Zoning Commission denying the variance, Commissioner Mueller reiterated the conclusion that the Planning and Zoning Commission "would have approved it, if [they] would have had all the facts," as his rationale for voting in favor of the variance.

The district court inferred from these comments that Commissioner Mueller had knowledge of facts surrounding the Harris variance before the January 4, 2001, hearing and at best, that he possessed information that the other commissioners did not share

in. Significantly, the district court also concluded from Commissioner Mueller's following comments that he appeared to have predetermined the question as to whether the variance should be granted:

I guess my only comment is that I think Bottle Bay is about the only unique bay on the whole lake. It's small; it's steep on both sides. It costs a lot of money if the people are going to be allowed to use this property. I think this forty-foot setback was wrong for that particular bay. Now, very possibly the rest of the lake, it would fit on some of it, but not all of it again because a lot of it is steep.

* * *

I wish we were giving the Planning Department instructions right now to let's allow boathouses.... We need to grant these variances, or maybe not variances, but we need to change things.

* * *

I think this variance needs to be granted to these people even though they built without the proper variance to begin with.

A decision maker is not disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that the decision maker is "not capable of judging a particular controversy fairly on the basis of its own circumstances." *Hortonville Joint School Distr. No. 1 v. Hortonville Education Ass'n*, 426 U.S. 482, 493, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1, 9 (1941). Prehearing statements by a decision maker are not fatal to the validity of the zoning determination as long as the statement does not preclude the finding that the decision maker maintained an open mind and continued to listen to all the evidence presented before making the final decision. *See generally McPherson Landfill, Inc. v. Board of Comm'rs of Shawnee County*, 274 Kan. 303, 49 P.3d 522, 531 (2002). By way of explanation then, prehearing statements by a decision maker are fatal to the validity of the zoning determination if the statements show that the decision maker: (a) has made up his or her mind regarding

the facts and will not listen to the evidence with an open mind, or (b) will not apply the existing law, or (c) has already made up his or her mind regarding the outcome of the hearing.

Here, Commissioner Mueller publicly expressed his position regarding the building of Bottle Bay boathouses in general. What customarily could be viewed as political or philosophical musings, became predetermination of a pending controversy when he "wished we're giving the Planning Department instructions right now to let's allow boathouses .... we need to grant these variances, or maybe not variances but we need to change things." Mueller's comments regarding a pending variance request—the Harris variance request—foretold the result of the proceedings before the Board that were yet to take place.

There are similarities between this case and *Barbara Realty Co. v. Zoning Board of Cranston*, 85 R.I. 152, 128 A.2d 342 (1957), where one of the decision makers, learning that the variance application would be opposed, responded, "What difference does it make, we are going to shove it down your throat anyway." The evidence in *Barbara* showed that the decision maker "had prejudged the matter before it and, therefore, could not render a fair and impartial decision." *Id.* at 342, 128 A.2d 342.

Recently, this Court reviewed an order of the Board of Commissioners validating a road and held unconstitutional the participation of a commissioner who had spoken publicly about the road in question and its public status prior to the hearing. *Floyd v. Board of Comm'rs of Bonneville County, et al.*, 137 Idaho 718, 52 P.3d 863 (2002). Finding actual bias sufficient to disqualify the commissioner, the Court nevertheless determined that due process would be satisfied by simply disregarding that commissioner's vote, which was not the "swing vote" among the three commissioners. *Id.* at 727, 52 P.3d at 871.

Mueller's statements may have created an appearance of unfairness. Although the comments were not as blatant as in *Barbard Realty, supra,* they are cause for concern

especially when viewed in conjunction with the ex parte communication.

### C. Ex parte communications and impermissible view.

The second question raised by Harris's argument on appeal is whether Commissioner Mueller's decision was based, as the district court found, on evidence that was beyond the record. At issue are the *ex parte* communications between Mueller and Harris and the impermissible view of the subject boathouse site.

"When *ex parte* contacts are present in the context of quasi-judicial zoning decisions, such as variances and special use permits, courts will be more receptive to challenges to decisions on grounds of zoning bias." *McPherson Landfill, Inc., supra,* 49 P.3d at 533, *quoting* 32 Proof of Facts 531, § 16. Idaho Code, Section 67–5253 addresses *ex parte* communications in contested administrative cases:

Unless required for the disposition of *ex parte* matters specifically authorized by statute, a presiding officer serving in a contested case shall not communicate, directly or indirectly, regarding any substantive issue in the proceeding, with any party, except upon notice and opportunity for all parties to participate in the communication.

A quasi-judicial officer must confine his or her decision to the record produced at the public hearing. *Idaho Historic Preservation Council v. City Council of City of Boise,* 134 Idaho 651, 8 P.3d 646 (2000). Any *ex parte* communication must be disclosed at the public hearing, including a "general description of the communication." *Id.* at 656, 8 P.3d at 651. The purpose of the disclosure requirement is to afford opposing parties with an opportunity to rebut the substance of any *ex parte* communications. In a similar vein, the opportunity to be present at a view provides opposing parties the opportunity to rebut facts derived from the visit that may come to bear on the ultimate decision and create an appearance of bias. A view of the subject property without notice to the interested parties by a board considering an appeal from the commission has been held a

violation of due process. *Comer v. County of Twin Falls,* 130 Idaho 433, 438, 942 P.2d 557, 562 (1997); *Chambers v. Board of County Comm'rs,* 125 Idaho 115, 118, 867 P.2d 989, 992 (1994).

Commissioner Mueller admitted on the record that he had spoken to Harris a couple of times; however, he did not reveal the substance of the conversations or when exactly they had taken place. He admitted driving by the Harris property but denied that he had any conflict of interest.

At the regular Commission meeting of August 31, 2000, Commissioner Mueller stated:

I can't tell you how much it is costing him through the County. He's went (sic) through one variance, now he's going through the second variance, O.K. We turned the first one down, you guys did. Uh, the helper he has, an engineer, he's about $5,000 into it right now. In the end, it is going to get approved and all he is doing is spending tons of dollars.

This statement shows prior conversations with the applicant and a predetermination "it is going to get approved."

Additionally, in his opening remarks at the noticed public hearing on January 4, 2001, when the Board took new evidence on the Harris variance, Commissioner Mueller's opening comments at the hearing indicated that if the Planning and Zoning Commission had known all the facts "they would have given us a recommendation to pass this." Again, this is an example of predetermination and existing knowledge of the facts outside of the proper hearing process.

In our view, Commissioner Mueller's prehearing, *ex parte* contacts with the applicant himself concerning the variance at issue reveal a lack of impartiality and denial of an opportunity for opponents of the variance to challenge or answer the *ex parte* evidence. Mueller effectively had evidence derived from the *ex parte* contacts and the unauthorized view that was not available to the entire Board or equally to the parties.

■ In addition, although the district court determined that "there is no indication any commissioners conducted a "view" in a judicial sense," *Comer* demands that any

view of a parcel of property in question must be preceded by notice and the opportunity to be present to the parties in order to satisfy procedural due process concerns. *Comer, supra* at 439, 942 P.2d at 563. If Commissioner Mueller had previously viewed the property for reasons unrelated to the pending matter (*i.e.* located in his neighborhood or on his daily commute to work) he should have disclosed the fact of the view prior to the hearing, in order to allow the parties to object or move for a viewing by all of the commissioners. The commissioners could then have dealt with those motions within their discretion.

■ Based upon Mueller's *ex parte* contacts and his prehearing statements concerning the boathouse in Bottle Bay, we uphold the district court's findings of bias, which are supported by the evidence. We conclude that the district court properly held that Commissioner Mueller's comments and *ex parte* contacts regarding the subject variance violated the due process rights of the Eacrets. Under these the circumstances, Mueller's comments not only created an appearance of impropriety but also underscored the likelihood that he could not fairly decide the issue in the case. The totality of these factors supports the trial court's conclusion that Mueller's mind was irrevocably closed on the subject of the setback variance sought by Harris. Moreover, since the variance was granted with a vote of two to one, Mueller's participation mandates a reversal of the decision of the Board. Therefore, we affirm the district court's decision remanding the matter to the Board.

## II.

■ On appeal from the district court's decision awarding fees and costs to the Eacrets, the County argues that the Eacrets' memorandum of costs and fees was not presented to the district court in a timely fashion and that the filing of the appeal by Harris from the district court's decision divested the district court of jurisdiction to thereafter make an award of fees and costs. The County also contests the district court's application of I.R.C.P. 54 in determining the

attorney fee and cost award as well as the scope of the attorney fee award, which the County asserts improperly encompassed fees incurred during the administrative proceedings.

The Eacrets' request for attorney fees was made in their petition for judicial review to the district court. The Eacrets' memorandum of costs, however, was not submitted to the district court until April 8, 2002, approximately four months after the district court's November 20, 2001, opinion on the appeal and following the decision of the Board of Commissioners on remand. The filing of the memorandum appears to correlate with that portion of the district court's opinion ruling that "all requests for attorney fees under I.C. § 12–117 will be reserved for determination based upon the results of the remand." In other words, the Eacrets delayed filing their memorandum of costs pending the resolution of the remand to the Board of Commissioners. The County objected, contending that the memorandum was untimely filed.

■ The district judge erred when he did not follow I.A.R. 41(c), which provides that the court "in its decision on appeal shall include its determination of a claimed right to attorney fees." Even though the district judge's decision postponed the determination of the prevailing party on appeal and of the attorney fees to be awarded under I.C. § 12–117, the parties seeking fees and costs were nevertheless bound by I.A.R. 40. Section (c) of the rule expressly provides that any party who claims costs shall file with the court a memorandum of costs within fourteen days of the filing and announcement of the opinion on appeal, whether or not a petition for rehearing or petition for review is filed. I.A.R. 40(c). "Failure to file a memorandum of costs within the period prescribed by the rule shall be a waiver of the right to costs." *Id.*

Upon the district judge's retirement, the Eacrets' pending motion for attorney fees and costs was reassigned to another district judge, who heard the parties' arguments on June 12, 2002. The district court entered an order declaring the Eacrets the prevailing parties and holding that they were entitled to fees pursuant to I.C. § 12–117 because the County had acted without a reasonable basis in fact or law going back to the August 31, 2000, business meeting where the commissioners improperly discussed the Harris variance.[2]

■ Where the appellate court reviews a trial court's decision regarding attorney fees requested by a person in an administrative or civil judicial proceeding against a state agency, city, county, or other taxing district, a free review or *de novo* standard is applicable. *Rincover v. Dep't of Fin., Sec. Bureau,* 132 Idaho 547, 976 P.2d 473 (1999). Idaho Code, Section 12–117 is not discretionary, but provides that the court must award attorney fees where a state agency did not act with a reasonable basis in fact or law in a proceeding involving a person who prevails in the action. *Id.*

If the court decides that (1) an attorney fee statute, (2) rule, or (3) contract provision is applicable, it must then determine if all of the requirements for the award of attorney fees have been met.

Jesse R. Walters, Jr., *A Primer for Awarding Attorney Fees in Idaho,* Idaho Law Review 17, 1–88 (2001). In the case before the Court, the filing of the Eacret's memorandum of costs was not in compliance with I.A.R. 40(c) as it was not filed "within fourteen days from the filing and announcement of the opinion on appeal." As a matter of law, the untimely memorandum barred consideration of the Eacrets' request for attorney fees and costs.

■ Finally, we address the County's argument that the district court was divested of jurisdiction to make an award of fees and costs upon the filing of Harris's appeal to this Court. A timely notice of appeal automatically stays all proceedings in a civil action in the district court. I.A.R. 13(a). Pursuant to

---

2. Idaho Code, Section 12–117 states that attorney fees, witness fees and expenses may be awarded against a county only when it is an "adverse party." We note that the Board of Commissioners was sitting in its appellate capac-

ity reviewing the administrative proceeding of the Planning and Zoning Commission and was not an "adverse party" until the case was taken to the district court.

I.A.R. 13(b), the district court "shall have the power and authority to rule upon" the motions enumerated therein. I.A.R. 13(b)(9) does not apply because it is only concerned with an award of attorney fees for the "trial" in the matter. Here, the district court was sitting in its appellate capacity, and the rules governing the court's authority to decide a motion for an award of attorney fees are I.A.R. 40 and 41, which we have previously held were not followed in this case. Therefore the County's argument fails.

Accordingly, we vacate the district court's order awarding attorney fees, costs and witness fees and the corresponding judgment in favor of the Eacrets for failure to comply with I.A.R. 40 and 41.

## CONCLUSION

We conclude that the decision of the Board granting the Harris variance was properly vacated and remanded by the district court on the basis of bias of one of the Commissioners. We vacate the district court's award of fees and costs against the County.

The Eacrets have prevailed in the appeal brought by Harris challenging the finding of bias made by the district court to support its decision to vacate and remand the variance approval. The County prevailed in the appeal from the award of fees and costs to the Eacrets. Because of the mixed result, we decline to award fees in this appeal and each party is to bear its own costs and fees.

Chief Justice TROUT and Justices SCHROEDER and EISMANN, concur.

KIDWELL, J., dissents without opinion.