# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 32884

| | |
|---|---|
| MARCIA T. TURNER, L.L.C., | ) |
| | ) Boise, March 2007 Term |
| Plaintiff-Appellant, | ) |
| | ) Opinion No. 62 |
| v. | ) |
| | ) Filed: April 27, 2007 |
| CITY OF TWIN FALLS, | ) |
| | ) Stephen W. Kenyon, Clerk |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Twin Falls County.  The Hon. G. Richard Bevan, District Judge.

The decision of the City Council is <u>affirmed</u>.

Clark Law Office, Eagle, for appellant.  Eric R. Clark argued.

Wonderlich & Wakefield, Twin Falls, for respondent.  Fritz Wonderlich argued.

---

EISMANN, Justice.

This is an appeal of a decision by the city council denying the request for a special use permit to construct a television transmission tower.  We affirm the decision of the city council.

## I.  FACTS AND PROCEDURAL HISTORY

Marcia T. Turner, L.L.C., (Turner) desired to operate a primary television station on Blue Lakes Boulevard in the City of Twin Falls.  In conjunction with the proposed television station, Turner wanted to build a 120-foot-tall, lattice transmission tower.  The property on which Turner desired to operate the television station was zoned C-1, Commercial Highway District.  The permitted uses in that zone included "television stations without transmission and receiving towers."  Twin Falls Code § 10-4-8.2(A).  A special use permit could be granted to operate "television stations with wireless communications facilities" if such use was "not in conflict with the comprehensive plan."  Twin Falls Code § 10-4-8.2(B).  In addition, Twin Falls Code § 10-

13-2-2 required that the requested special use at the proposed location comply with nine standards.[1]

On May 13, 2003, Turner filed an application for a special use permit to do so. That application was initially heard by the Twin Falls Planning and Zoning Commission (P&Z Commission). After a public hearing on July 8, 2003, it voted to grant Turner's request for a special use permit to construct the transmission tower. It issued its written findings and decision on July 29, 2003.

At the City Council's regularly scheduled meeting on July 21, 2003, the Planning and Zoning Director informed the members of the Council of the Commission's decision regarding the transmission tower. The Council voted to exercise its authority to review and hear that decision. On August 18, 2003, the City Council held a public hearing on Turner's application for the special use permit. At the conclusion of the hearing, the Council voted to deny the application. It issued its written findings of fact and decision on September 18, 2003.

On September 15, 2003, Turner filed a petition for judicial review. The matter was heard by the district court, which affirmed the decision of the City Council. Turner then appealed to this Court.

---

[1] City Code § 10-13-2-2(D) provides:

    Standards Applicable to Special Uses: The Commission shall review the particular facts and circumstances of each proposed special use in terms of the following standards and shall find adequate evidence showing that such use at the proposed location:

1. Will, in fact, constitute a special use as established by zoning requirements for the zone involved.
2. Will be harmonious with and in accordance with the general objectives or with any specific objective of a comprehensive plan and/or zoning regulations.
3. Will be designed, constructed, operated and maintained to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area.
4. Will not be hazardous or disturbing to existing or future neighboring uses.
5. Will be served adequately by essential public facilities and services such as highways, streets, police and fire protection, drainage structures, refuse disposal, water and sewer and schools; or that the persons responsible for the establishment of the proposed use shall be able to provide adequately any such services.
6. Will not create excessive additional requirements at public cost for public facilities and services and will not be detrimental to the economic welfare of the community.
7. Will not involve uses, activities, processes, materials, equipment and conditions of operation that will be detrimental to any person, property or to the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare or odors.
8. Will have vehicular approaches to the property which shall be so designed as not to create an interference with traffic on surrounding public thoroughfares.
9. Will not result in the destruction, loss or damage of a natural, scenic or historic feature of major importance.

## II. ISSUES ON APPEAL

1. Did the Twin Falls Code require the City Council to make specific factual findings in order to review the decision of the Commission?

2. Did the City Council violate due process by failing to limit its review to the record generated before the P&Z Commission?

3. Was the City Council's decision supported by substantial evidence?

4. Is either party entitled to an award of attorney fees on appeal pursuant to Idaho Code § 12-117?

## III. ANALYSIS

A person aggrieved by a city or county land-use decision may seek judicial review of that decision in the district court under the Idaho Administrative Procedures Act (IAPA). *County Residents Against Pollution from Septage Sludge v. Bonner County*, 138 Idaho 585, 67 P.3d 64 (2003); Idaho Code § 67-6521(d). On an appeal from the district court acting in its appellate capacity under the IAPA, this Court reviews the record independently of the district court's opinion. *Sanders Orchard v. Gem County ex rel. Bd. of County Comm'rs*, 137 Idaho 695, 52 P.3d 840 (2002). This Court will not consider issues that were not raised before the district court even if those issues had been raised in the administrative proceeding. *Cooper v. Bd. of Prof'l Discipline of the State Bd. of Med.*, 134 Idaho 449, 4 P.3d 561 (2000).

When reviewing a land-use decision, this Court does not substitute its judgment for that of the decision maker as to the weight of the evidence presented on questions of fact. *Id.*; Idaho Code § 67-5279(1). Rather, this Court defers to the findings of fact unless they are clearly erroneous. Likewise, in matters involving the exercise of discretion, this Court does not substitute its discretion for that of the decision maker. *Sanders Orchard v. Gem County ex rel. Bd. of County Comm'rs*, 137 Idaho 695, 52 P.3d 840 (2002). The land-use decision may be overturned only where it: (a) violates statutory or constitutional provisions; (b) exceeds statutory authority; (c) was made upon unlawful procedure; (d) is not supported by substantial evidence in the record as a whole; or (e) is arbitrary, capricious, or an abuse of discretion. *Id.*; Idaho Code § 67-5279(3). In addition, the land-use decision must be upheld if substantial rights

of the appellant have not been prejudiced. *Sanders Orchard v. Gem County ex rel. Bd. of County Comm'rs*, 137 Idaho 695, 52 P.3d 840 (2002); Idaho Code § 67-5279(4) (2001). If the land-use decision is not affirmed, it shall be set aside in whole or in part and the case remanded. Idaho Code § 67-5279(3)(e).

**A. Did the Twin Falls Code Require the City Council to Make Specific Factual Findings in Order to Review the Decision of the P&Z Commission?**

At the regularly scheduled City Council meeting on July 21, 2003, the Planning and Zoning Director informed the Council members that on July 8, 2003, the P&Z Commission had approved the erection of a 120-foot-tall television transmission tower on Blue Lakes Boulevard. After discussing the tower in general terms, the Council voted unanimously to review and hear the matter. Turner contends that the City Council could not do so unless it made a factual finding, based upon evidence in the record, that the action of the P&Z Commission may have a significant adverse impact.

Section 10-17-2 of the Twin Falls Code[2] permitted the City Council, on its own motion, to review and hear any action taken by the P&Z Commission if the Council "determines, within fifteen (15) days of Commission action, that there may be significant adverse impact as a result of the Commission action." At its meeting on July 21, 2003, the City Council did not receive evidence as to any significant adverse impact that may result from the erection of the tower, nor did it expressly find that the tower may cause a significant adverse impact. The City Code does not expressly require that it do so.

A city council, as the governing board, may exercise all of the powers required and authorized under the Local Land Use Planning Act, or it may delegate powers to a city planning

---

[2] That ordinance provided:

> There is hereby created, a planning and zoning commission and throughout this title is referred to as the commission. The commission shall be constituted and shall function according to the bylaws herein set forth and shall have all of the power or authority to consider ordinances or to recommend amendments to or repeal of any portion of this title. The commission shall provide guidance and assistance to the council, holding public hearings as required by law, and shall grant or deny applications presented to the commission, and shall make timely written recommendations to the council in all matters relating to this title in which the council has final decision making powers. Any action taken by the commission which would be final unless appealed may be reviewed and heard by the council when an appeal is not made but the council determines, within fifteen (15) days of Commission action, that there may be significant adverse impact as a result of the Commission action.

4

and/or zoning commission it creates. I.C. § 67-6504. By City Code § 10-17-2, the City Council created the P&Z Commission for the City of Twin Falls. The Council interpreted Section 10-17-2 as reserving to itself the power to review and hear any action taken by the Commission if a majority of the members of the Council believed that such action may have an adverse impact. There is a strong presumption favoring the validity of a governing board's zoning decisions, including its application and interpretation of its own zoning ordinance. *Chisholm v. Twin Falls County*, 139 Idaho 131, 75 P.3d 185 (2003); *Sanders Orchard v. Gem County ex rel. Bd. of County Comm'rs*, 137 Idaho 695, 52 P.3d 840 (2002). The City Council's interpretation of its ordinance is reasonable. It therefore had the power to review and hear the action of the P&Z Commission simply by a majority vote without the necessity for hearing evidence or making findings as to whether such action may have a substantial adverse impact.

Turner asserts that interpreting City Code § 10-17-2 in this manner would violate due process. It argues that if the City Council can decide, on its own, to review and hear an action of the P&Z Commission, the City Council cannot be an impartial decision maker.

"The Due Process Clause entitles a person to an impartial and disinterested tribunal. . . . Decisions by a zoning board applying general rules or specific policies to specific individuals, interests or situations, are quasi-judicial in nature and subject to due process constraints." *Eacret v. Bonner County*, 139 Idaho 780, 784, 86 P.3d 494, 498 (2004) (citations omitted). "When acting upon a quasi-judicial zoning matter the governing board is neither a proponent nor an opponent of the proposal at issue, but sits instead in the seat of a judge." *Lowery v. Bd. of County Comm'rs for Ada County*, 115 Idaho 64, 71, 764 P.2d 431, 438 (1988). In this context, the Due Process Clause would therefore apply to the zoning board in the same way that it applies to judges.

In *Republican Party of Minn. v. White*, 536 U.S. 765 (2002), the United States Supreme Court addressed the meaning of "impartiality" as it is used in the context of applying the Due Process Clause to judges. It means "the lack of bias for or against either party to the proceeding. Impartiality in this sense assures equal application of the law. That is, it guarantees a party that the judge who hears his case will apply the law to him in the same way he applies it to any other party." *Id.* at 775-76. In the context of due process, it does not mean "lack of preconception in favor of or against a particular legal view. This sort of impartiality would be concerned, not with guaranteeing litigants equal application of the law, but rather with guaranteeing them an equal

chance to persuade the court on the legal points in their case." *Id*. at 777. It also does not mean having "no preconceptions on legal issues, but [being] willing to consider views that oppose his preconceptions, and remain[ing] open to persuasion, when the issues arise in a pending case." *Id*. at 778. Impartiality under the Due Process Clause does not guarantee each litigant a chance of changing the judge's preconceived view of the law. *Id*. "A decision maker is not disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that the decision maker is 'not capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Eacret v. Bonner County*, 139 Idaho 780, 785, 86 P.3d 494, 499 (2004) (quoting from *Hortonville Joint School Distr.  No. 1 v. Hortonville Education Ass'n*, 426 U.S. 482, 493 (1941)).

When deciding to review and hear an action of the P & Z Commission pursuant to its authority under City Code § 10-17-2, the City Council is not required to make a finding that the Commission's action was wrong. It must simply decide that "there may be significant adverse impact as a result of the Commission's action." Having and exercising that power does not violate the Due Process Clause.

**B. Did the City Council Violate Due Process by Failing to Limit Its Review to the Record Generated before the P&Z Commission?**

Turner first argues that the City Council was required to hear the matter as an appellate proceeding and to consider only the record developed before the P&Z Commission. Based upon that assertion, Turner contends that it was denied due process because the Council received evidence outside that record, specifically testimony at the public hearing held on August 18, 2003, and e-mails[3] received by some Council members before it issued its written findings of fact and conclusions of law. With the exception of one e-mail (the Bonnett e-mail) that will be discussed below, four e-mails were sent to Council members on September 16 and 17, 2003, after the Council had voted to deny Turner's special use permit but just before it issued its written findings of fact and conclusions of law on September 18, 2003. None of those e-mails were mentioned in the findings of fact.

---

[3] With the exception of one e-mail discussed below, the e-mails were received on September 16 and 17, 2003. The City Council voted to deny Turner's requested special use permit on August 18, 2003, and it issued its written finding of fact and conclusions of law on September 18, 2003.

The City Council interpreted its ordinance as retaining to itself the power to conduct a *de novo* review of the application for a special use permit. There is a strong presumption favoring its interpretation of its own ordinance. *Chisholm v. Twin Falls County*, 139 Idaho 131, 75 P.3d 185 (2003); *Sanders Orchard v. Gem County ex rel. Bd. of County Comm'rs*, 137 Idaho 695, 52 P.3d 840 (2002). City Code § 10-17-2 provides that any action by the P&Z Commission may be "reviewed and heard" by the Council. The Council interpreted that code section as requiring a public hearing. The City Code does not contain any provision outlining the procedures for hearing a matter strictly in an appellate capacity. The procedures for conducting hearings by either the City Council or the P&Z Commission are set forth in City Code § 10-17-4, entitled "Procedures for the Conduct of Hearings." That code section requires a public hearing at which those interested can present testimony and exhibits and be questioned by members of the body conducting the hearing. The presentation of additional evidence is consistent with a *de novo* review and is inconsistent with an appellate review confined to the record made below. *Petersen v. Franklin County*, 130 Idaho 176, 938 P.2d 1214 (1997). City Code § 10-13-2-2 directs the City Council on appeals from an application for a special use permit "to reach a decision to uphold, conditionally uphold or overrule the decision of the commission." The Council's authority "to uphold, conditionally uphold or overrule" the decision of the P&Z Commission is also consistent with the Council exercising *de novo* review. *Davisco Foods Int'l, Inc. v. Gooding County*, 141 Idaho 784, 118 P.3d 116 (2005). The Council's interpretation that its ordinance required it to conduct a *de novo* review of Turner's application for a special use permit is reasonable. Since it was exercising *de novo* review, it was not confined to the record made before the P&Z Commission.

Turner argues that even if the City Council was empowered to receive additional evidence, the Council deprived Turner of due process when it voted on July 21, 2003, to review and hear the P&Z Commission's approval of the special use request. Turner contends it was denied due process because it did not receive notice of that hearing and because some members of the Council had received an *ex parte* communication before that hearing. The *ex parte* communication was the Bonnett e-mail dated July 9, 2003, in which Bonnett expressed opposition to the P&Z Commission's action in approving the transmission tower.

A local governing body sits in a quasi-judicial capacity, and therefore must comply with the requirements of due process, when the body is "applying general rules or policies to specific

individuals, interests, or situations." *Cooper v. Board of County Comm'rs of Ada County*, 101 Idaho 407, 410, 614 P.2d 947, 950 (1980). The requirements of due process did not apply to the City Council's decision on July 21, 2003, to review and hear the P&Z Commission's approval of Turner's special use permit. The Council was not acting in a quasi-judicial capacity when it decided to review the Commission's action. That decision was not required to be made after an evidentiary hearing, nor was it required to be based upon evidence in the record. It did not involve applying "general rules or policies to specific individuals, interests, or situations." The Council was not making any determination regarding the merits of Turner's application for a special use permit. It was merely deciding to exercise its power to hear that application. Therefore, there was no due process violation in connection with the Council's decision to review Turner's application for a special use permit.

In its reply brief, Turner also contends that the City Council violated due process by failing to disclose the existence of the Bonnett e-mail prior to the public hearing held on August 18, 2003. Turner contends it recently discovered the existence of the e-mail.

"'[T]his Court will not consider arguments raised for the first time in the appellant's reply brief.' A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) (quoting from *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004)). Although Turner's appellate counsel may have just learned of the Bonnett e-mail, a letter from Turner's prior counsel objecting to the public hearing refers to the e-mail. Likewise, Turner's prior counsel mentioned the e-mail during the public hearing. Any allegation that the City Council violated due process by failing to disclose the existence of the Bonnett e-mail should have been raised below. It is too late to raise that issue in the reply brief. Therefore, we will not address the issue.

**C. Was the City Council's Decision Supported by Substantial Evidence?**

After reviewing and hearing the matter, the City Council concluded that the proposed transmission tower was not consistent with the provisions of the Comprehensive Plan, was not consistent with the zoning provisions of the City Code, was not a proper use in the C-1 zone, and

would be unsightly in the proposed location. Turner contends that the City Council's findings are not supported by substantial evidence.

Turner argues that the City Council did not present "'substantial evidence' to support reversing the P & Z Commission's decision. . . . [I]t appears the City Council was concerned strictly with aesthetics and nothing more, as evidenced by the Findings of Fact and Conclusions of Law." (Emphasis in original.) Turner also criticizes the Council's failure to address the P&Z Commission's findings, stating, "Notwithstanding the Planning and Zoning Commission's findings, in the City Council's Findings of Fact, Conclusions of Law, and Decision the Council make no reference to any information generated by the Commission."

The City Council was not required to address the P&Z Commission's findings or decision, nor was it required to find that the Commission had made any legal error or that its findings lacked support in the record. The Council heard this matter *de novo*. A *de novo* review means "a trying of the matter anew—the same as if it had never been heard before." *Gilbert v. Moore*, 108 Idaho 165, 168, 697 P.2d 1179, 1182 (1985). The Council's decision to conduct its *de novo* review had the effect of removing the P&Z Commission's decision from the record. *See, Leavitt v. Leavitt*, 142 Idaho 664, 668, 132 P.3d 421, 425 (2006). Thus, the Council did not err by failing to address the Commission's decision.

In support of its assertion that the City Council's decision is not supported by evidence in the record, Turner argues, "What more compelling proof is there than not one citizen appeared and objected to the tower during the Planning and Zoning hearings and not one person appeared before the City Council, even after notice to the entire Magic Valley area, to voice any objection to the tower?" Turner's argument misapprehends the nature of the public hearing. It was not a trial where the weight of the evidence presented determined the result. The City Code provided that a special use permit "may" be authorized under certain circumstances. City Code § 10-13-2-2. It did not state that a special use permit "shall" be granted if those circumstances are proven at a public hearing. The use of the word "may" shows that the City Council had discretion regarding the decision to grant or deny the special use permit. In the exercise of that discretion, the Council could deny the application even if nobody testified against it.

The City Council was also entitled to consider aesthetics when deciding whether to grant Turner's application for a special use permit. As this Court stated in *Lamar Corp. v. City of Twin Falls*, 133 Idaho 36, 41, 981 P.2d 1146, 1151 (1999) (citations omitted), with respect to

9

billboards: "A city's appearance is a substantial government interest, and cities may enact zoning ordinances to preserve aesthetics. A city may regulate the construction and placement of billboards for the purpose of preserving aesthetics even though aesthetic judgments are 'necessarily subjective.'" Likewise, in *Williamson v. City of McCall*, 135 Idaho 452, 19 P.3d 766 (2001), we upheld a district court's determination that landowners had failed to prove that their request to separate their property from the city would not materially mar the symmetry of the city. In upholding the district judge, we stated: "This determination was based in part on the judge's visit to the property which is allowed under I.C. § 50-229. The district judge's own assessment of the aesthetic symmetry is competent evidence." 135 Idaho at 454, 19 P.3d at 768. The City Council did not abuse its discretion in denying the special use permit based upon its finding that "[a] 120' lattice transmission/receiving tower [at a gateway entrance to the city] would be unsightly and appear to be out of place in this area."

**D. Is Either Party Entitled to an Award of Attorney Fees on Appeal Pursuant to Idaho Code § 12-117?**

Turner requests an award of attorney fees under Idaho Code § 12-117 if it is the prevailing party on appeal. Since it is not, it is not entitled to an award of attorney fees.

The City of Twin Falls also requests an award of attorney fees under that statute. We will award attorney fees on appeal under that statute if we find that the losing party acted without a reasonable basis in law or in fact. We do not find that Turner's appeal was so lacking in merit that the City is entitled to an award of attorney fees under Idaho Code § 12-117.

## IV. CONCLUSION

We affirm the decision of the City Council. We award costs on appeal to the City of Twin Falls.

Chief Justice SCHROEDER and Justice BURDICK **CONCUR.** Justice TROUT **CONCURS EXCEPT AS TO PART III.A., IN WHICH SHE CONCURS IN THE RESULT**.

JONES, Justice, concurring in part and dissenting in part.

10

I concur in the Court's opinion for the most part, including the analysis in Section IIIA and B, as well as most of C, but disagree with the conclusion in Section IIIC that the City Council need not have addressed the P&Z Commission's findings or decision. It is my belief that, even though the City Council had the ability to review the application *de novo*, it had the obligation to make a reasoned decision, which included an obligation to explain its departure from the findings and conclusions of the P&Z Commission, the initial finder of fact. As I explained in Section II of my dissent in *Davisco Foods Intern. v. Gooding County*, 141 Idaho 784, 794-5, 118 P.3d 116, 126-7 (2005):

> The Court adheres to the rule that under the APA, when an agency's findings disagree with the hearing officer's recommended order, the reviewing court still examines the agency's findings and whether they are supported by substantial evidence. *Pearl v. Bd. of Prof'l Discipline*, 137 Idaho 107, 112, 44 P.3d 1162, 1167 (2002). But, in such cases the Court "will scrutinize the agency's findings more critically," since the Court imposes on agencies "an obligation of reasoned decision making that includes a duty to explain why the agency differed from the administrative law judge." *Id.*

> Our Court of Appeals first adopted this rule in *Woodfield v. Bd. of Prof'l Discipline*, 127 Idaho 738, 746, 905 P.2d 1047, 1055 (Ct. App. 1995). In *Woodfield* the Board of Professional Discipline of the State Board of Medicine issued an order revoking the appellant physician's license to practice medicine. The hearing officer had expressed concerns with the physician's conduct but did not recommend the physician's license be revoked. The Board of Medicine conducted an independent review and "depart[ed] significantly" from the hearing examiner's findings. 127 Idaho at 743, 905 P.2d at 1052. On review, the district court required the Board of Medicine to articulate its reasons for departing from the hearing examiner's decision. The Court of Appeals agreed, explaining:

>> [I]t is consistent with the Board's statutory obligation to render a reasoned decision to require the Board to identify facts, as well as inferences drawn from the facts upon the application of its expertise and judgment, which underlie its decision. Such an

11

> explanation is essential to meaningful judicial review, and it is a logical adjunct to the agency's statutory duty to supplement its decisions with findings of fact and conclusions of law.

127 Idaho at 747, 905 P.2d at 1056. The court grafted this rule from several federal cases involving the federal Administrative Procedure Act. *Id.* at 746 n.3, 905 P.2d at 1055 n.3. Because the court was not satisfied the Board of Medicine had met its obligation, the court remanded the Board of Medicine's decision "to delineate its own findings as the basis for its contrary conclusion to that of the hearing officer." *Id.* at 747, 905 P.2d at 1056.

This Court has not considered whether to extend *Woodfield* to cases under LLUPA where the county board of commissioners reverses its planning and zoning commission. Why the principle would not apply in such cases, however, I cannot say. Just as agencies must issue a reasoned statement for their conclusions – I.C. § 67-5248 (which requirement formed part of the basis for the court's rule in *Woodfield, see* 127 Idaho at 746, 905 P.2d at 1055) – so, too, must county boards of commissioners issue a reasoned statement explaining their decisions under LLUPA. I.C. § 67-6535. If the APA's reasoned statement requirement produced the rule in *Woodfield*, one could reasonably conclude the rule would apply to decisions that must conform to I.C. § 67-6535.

In *Woodfield,* the hearing officer played the role of initial fact finder, making recommended findings and conclusions. The Board of Medicine was the decision-making entity and had the right and authority to depart from the findings and conclusions proposed by the hearing officer. In this case, it appears the City Council exercised its prerogative to conduct a *de novo* hearing and, thus, was the decision-making entity. As in *Woodfield*, the decision-making entity in a planning and zoning matter should provide an explanation for departing from the findings and conclusions made by the initial fact finder.

The situation here is that the P&Z Commission made five findings of fact regarding Turner's application. The City Council's findings are identical, except for the fifth finding. In that finding, the P&Z Commission stated, "Blue Lakes Boulevard is a gateway arterial and a main entrance into Twin Falls." The City Council added to this sentence that, "The City has worked to improve the appearance of its gateway entrances to the City. A 120' lattice transmission/receiving tower at this location would be unsightly and appear to be out of place in this area. A television station without the requested transmission/receiving tower would be permissible." In its conclusions of law, the P&Z Commission determined: (1) that Turner's application for a Special Use Permit "is consistent with the purpose of the C-1 Zone, and is not detrimental to any of the outright permitted uses or existing special uses in the area," (2) that the

proposed use "is consistent with" the Comprehensive Plan and Zoning Ordinance of the City of Twin Falls, (3) that the proposed use "is a proper use in the C-1 Zone" (subject to certain conditions imposed by the P&Z Commission), and (4) that the application "should be granted" subject to the conditions. The City Council essentially used the same language, except for the following minor revisions: (1) the application "is not consistent with the purpose of the C-1 Zone, and may be detrimental" to other uses in the area, (2) the proposed use "is not consistent" with the Comprehensive Plan and Zoning Ordinance of the City of Twin Falls, (3) the proposed use "is not proper use in the C-1 Zone," and (4) the application "should be denied."

It is understandable that Turner might be somewhat mystified by these two substantially different outcomes. The P&Z Commission determined all issues in favor of Turner, while the City Council determined all issues against Turner. The two entities reached these opposite conclusions on essentially the same evidentiary record. No explanation is provided as to why the substantial turn-about occurred, other than two sentences in the City Council's finding 5. This type of decision-making process does not inspire confidence; rather, it gave the impression of arbitrariness, whether we are dealing with a review on the record or a *de novo* review. While I certainly believe that the City Council can make different findings of fact and conclusions of law than its planning and zoning commission, and reach a different outcome, I would require that the City articulate its reasons for departing from the P&Z Commission's findings and conclusions. This would seem to be an essential ingredient of a reasoned decision. Therefore, I would vacate and remand to the City for this specific purpose.

13