**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43739**

| | | |
|---|---|---|
| **ROBERT LEON MERTENS,** | ) | **2016 Unpublished Opinion No. 558** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed: June 3, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ESTATES OF MARCELLA MERTENS AND GORDON MERTENS,** | ) | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |
| | ) | |
| Respondents. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Jeff M. Brudie, District Judge; Hon. Barbara Buchanan, Magistrate.

Order of the district court, on intermediate appeal, affirming the magistrate's decision on remand, <u>affirmed</u>.

Robert Leon Mertens, Pekin, Illinois, pro se appellant.

Estates of Marcella Mertens and Gordon Mertens, Sandpoint, respondents, did not participate on appeal.

_____

GUTIERREZ, Judge

Robert Leon Mertens appeals from the district court's order, on intermediate appeal, affirming the magistrate's decision on remand. For the reasons set forth below, we affirm.

**I.**

**FACTUAL & PROCEDURAL BACKGROUND**

Robert's mother, Marcella Mertens, passed away on March 21, 2004.[1] In November 2008, the magistrate ordered distribution of $3,500 to Robert as his full and final distribution. Robert appealed the order for final distribution to the district court, which affirmed the

_____

[1] Robert's father, Gordon Mertens, predeceased Marcella. His estate was re-opened and consolidated with the estate of Marcella.

1

magistrate.[2] Robert appealed the matter to this Court, asserting numerous claims of error. *In re Estate of Mertens*, Docket No. 37908 (Ct. App. Jan. 17, 2012) (unpublished). This Court reversed the district court's order affirming the magistrate, vacated the magistrate's order of final distribution to Robert, and remanded the case to the magistrate for determination on two narrow issues relating to Robert's final distribution. *Id.*

On July 23, 2012, the magistrate entered its ruling on the two issues that were remanded by this Court after hearing argument from Robert and the personal representative of the consolidated estate. In its order, the magistrate found that Robert was entitled to one-half of the proceeds from the liquidation of stock from Gordon's estate in the amount of $9,601. However, such amount was to be reduced by one-fourth of the total cost attributable to reopening and liquidating Gordon's estate--an amount of $3,458. Thus, Robert was entitled to $6,143 from Gordon's estate. The magistrate also found that Robert was entitled to $7,628.50 from the proceeds of stock from Marcella's estate. The magistrate found that Robert was entitled to a total distribution of $13,771.50. The magistrate then entered a clarification order on August 15, 2012, stating that this amount was not to be reduced by any of the $3,500 that was previously distributed to Robert.

On October 1, 2012, Robert filed a notice of appeal of the magistrate's orders following remand. However, on May 1, 2013, Robert filed a motion for voluntary dismissal of his appeal, and the district court entered an order to that effect on May 31, 2013. The magistrate subsequently entered an estate closing order and a decree of final discharge on July 2, 2013, and July 15, 2013, respectively.

On August 9, 2013, Robert delivered a notice of appeal to the district court as well as a motion for fee waiver. The motion for fee waiver was denied on September 3, 2013. Because Robert's fee waiver was denied, the clerk of the district court did not file Robert's notice of appeal, but returned the notice to him. However, the fee waiver was later granted on September 30, 2013, based on Robert's motion to reconsider. Robert then filed a document titled "Amended Notice of Appeal to the District Court" on October 15, 2013, seeking to appeal three orders of the magistrate: the July 23, 2012, decision on remand; the August 15, 2012,

---

[2]     Initially, Robert attempted to appeal the order for final distribution directly to the Idaho Supreme Court. The Idaho Supreme Court remanded the appeal to the district court, where the appeal was required to be heard first pursuant to Idaho Administrative Rule 11.

2

clarification order; and the July 2, 2013, estate closing order. The district court issued a notice of intent to dismiss the appeal on the basis that it was untimely. Although Robert responded, an order of dismissal was entered on January 7, 2014.

Robert then filed an appeal to this Court challenging the magistrate's three orders as well as the district court's dismissal of his appeal. *In re Estate of Mertens*, Docket No. 41866 (Ct. App. Feb. 10, 2015) (unpublished). The Supreme Court ordered the scope of the appeal to be limited to whether the district court erred in dismissing Robert's appeal on the basis that it was untimely. *Id.* This Court reversed the district court's order dismissing Robert's appeal, holding that if the appeal had been filed on the date Robert originally attempted to file his notice of appeal, it would have been timely as to the July 2, 2013, estate closing order. *Id.* This Court remanded the matter back to the district court, expressing no opinion as to the scope of issues which the district court could consider on intermediate appeal. *Id.*

On remand, the district court considered the merits of the two issues decided by the magistrate in its July 23, 2012, decision on remand. Ultimately, the district court affirmed the decision of the magistrate. Robert now timely appeals the district court's opinion and order.

## II.

## ANALYSIS

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.* Thus, the appellate courts do not review the decision of the magistrate. *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id.*

In his appeal to this Court of the district court's decision, Robert attempts to raise a number of issues for our consideration. We decline to address all but two issues. First, many of the issues that Robert argues to this Court were not raised before the magistrate. It is well established that an appellate court of this state will not consider issues that were not presented to

3

the trial court. *Marcia T. Turner, L.L.C. v City of Twin Falls*, 144 Idaho 203, 209, 159 P.3d 840, 846 (2007). Second, some of the issues now argued by Robert may have been presented to the trial court but were not raised in the intermediate appeal to the district court. Where an intermediate appeal has occurred, only issues raised in that intermediate appeal may be brought forward to a higher appellate court. *Wood v. Wood*, 124 Idaho 12, 16-17, 855 P.2d 473, 477-78 (Ct. App. 1993). Third, some of the issues Robert raises are duplicative of those already decided by this Court in his first appeal. The "law of the case" doctrine bars reconsideration of claims that were already decided by this Court in an earlier appeal. *Taylor v. Maile*, 146 Idaho 705, 709, 201 P.3d 1282, 1286 (2009). Fourth, some of Robert's arguments are not supported by any relevant legal authority. This Court will not address issues for which the appellant has not provided relevant legal authority. *Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 508, 148 P.3d 1247, 1254 (2006). Finally, we decline Robert's invitation to review the entire case record for error. Error is never presumed on appeal and the burden of showing it is on the party asserting it. *Stewart v. Sun Valley Co.*, 140 Idaho 381, 384, 94 P.3d 686, 689 (2004).

Accordingly, we limit our consideration of Robert's appeal to the two narrow issues decided by the magistrate in its July 23, 2012, decision on remand--the only two issues subsequently considered and decided by the district court on intermediate appeal. Those two issues are as follows: (1) Robert's interest as co-owner, if any, in stock that was liquidated, other than that stock for which the full proceeds were already distributed to Robert; and (2) whether any estate debts or expenses that were paid from the proceeds of assets devised to Robert should be allocated among other devisees with corresponding reimbursement to Robert or to the federal government as Robert's successor.

## A. Robert's Interest in the Liquidated Stock Portfolio

Robert's first claim of error involves his interest in various stock portfolios held in the names of Gordon Mertens, Robert as executor of Gordon's estate, Robert Mertens, or Marcella Mertens. Robert appears to argue that because he was the sole beneficiary under Gordon's will, and because Marcella devised her interest in the stocks to him in her will, he is entitled to the full proceeds from the liquidation of all stocks in the amount of $37,174.30.[3] Although Robert

---

[3] This value represents the total value of stocks liquidated in the consolidated estates through the liquidating firm. It includes proceeds from stocks that were titled in Robert's name only, which were already distributed to him and are not at issue in this appeal.

4

claims entitlement to the proceeds from the entire stock portfolio, the magistrate and district courts analyzed whether he had an interest as co-owner in proceeds from each respective estate. We analyze Robert's claims in similar fashion, but expand our consideration to include not only Robert's interest as co-owner in the stocks, but also Robert's interest as devisee.

### 1. Gordon's stocks

Robert first disputes his entitlement to the distribution of stocks liquidated from Gordon's estate. The stocks at issue were held either in the name of Gordon Mertens or in Robert's name as the executor of Gordon's estate. The amount of those proceeds totaled $19,202. The magistrate found that Robert was not a co-owner of those shares, but that those shares were co-owned by the estates of Gordon and Marcella as community property. Thus, each estate was entitled to a one-half share totaling $9,601. Although Robert was not a co-owner of the stocks with Gordon, because Robert was the sole beneficiary under Gordon's will, the court found that Robert was entitled to Gordon's one-half share as devisee, subject to distribution in accordance with Idaho probate law.[4]

Robert maintains that he is entitled to the full $19,202 in proceeds from the liquidation of this stock. He argues that because some of the stocks were registered in his name, as the executor of Gordon's estate, he had complete ownership of those stocks upon Gordon's death. Similarly, he argues that because he was the sole beneficiary under Gordon's will, he is entitled to those stocks titled in Gordon's name alone. The district court disagreed, holding that the magistrate properly deemed Gordon's entire stock portfolio as community property.

Pursuant to Idaho law, property acquired during marriage by either husband or wife is presumptively community property. *Stewart v. Stewart*, 143 Idaho 673, 677, 152 P.3d 544, 548 (2007). The party seeking to overcome the presumption has the burden of proving "with reasonable certainty and particularity" that an asset is separate property. *Estate of Hull v. Williams*, 126 Idaho 437, 441, 885 P.2d 1153, 1157 (Ct. App. 1994). This may be accomplished by showing that the property was acquired by one spouse prior to the marriage, by tracing the funds used to acquire the asset to a separate property source, or by showing that the property was acquired by one spouse as a gift, bequest, or devise during the marriage. *Id.* Absent such a

---

[4]    This includes reduction of proceeds to cover expenses of administration of the estate. *See* Idaho Code § 15-3-901, *et. seq*.

showing, all property "acquired after marriage by either the husband or wife" will be deemed community property. *Id.* at 440, 885 P.2d at 1156; *see also* Idaho Code § 32-906. One spouse may dispose of his or her one-half share of community property to someone besides the other spouse. *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Trust*, 147 Idaho 117, 128-29, 206 P.3d 481, 492-93 (2009). However, the entirety of a community property asset may not be given away to another person without the consent of both spouses. *Id.*

Robert points to no evidence in the record to refute the presumption that the stock portfolio owned by Gordon was anything other than community property. In fact, the record supports finding the portfolio was community property. Gordon's will expressly states his understanding that all of his property is community property owned jointly with his wife, Marcella. His will also acknowledges that his bequest to Robert would result in Robert and Marcella "owning jointly, as tenants in common," all that Marcella and Gordon owned prior to Gordon's death. Because Gordon's stocks were community property, one-half of the proceeds from the liquidation of those stocks belonged to Gordon's estate and the other half belonged to Marcella's estate.[5]

However, as the sole beneficiary under Gordon's will, Robert was entitled to Gordon's one-half interest in the proceeds as devisee, subject to applicable probate laws. Because the magistrate properly allocated one-half of the stock portfolio proceeds to Marcella's estate and the other half to Robert as devisee, the district court did not err in affirming the magistrate's decision on this issue.

### 2. Marcella's stock

Robert next disputes his entitlement to proceeds from stock held jointly by Marcella and him, as well as from stocks held by Marcella's estate. The stocks held jointly between Marcella and Robert were liquidated for $15,527. Robert argues that because Marcella's will bequeathed her interest in her stock portfolio to Robert, he should receive the full $15,527 in proceeds from the liquidation of those stocks, in addition to the $9,601 in proceeds from the liquidation of Marcella's one-half share of Gordon's stocks. The magistrate concluded that Robert was ultimately entitled only to one-half of the proceeds from the stocks he co-owned with Marcella.

---

[5] Again, because the shares passed through probate to each respective estate, both distributions were subject to all applicable probate laws, including abatement of proceeds to cover administration expenses. *See* I.C. 15-3-901.

As co-owner of the stocks, Robert was entitled to the full value of his one-half interest in the proceeds in the amount of $7,628.50. Because they were Robert's separate property, these proceeds were not subject to probate.

Regarding Robert's interest as beneficiary of Marcella's stock interest, we take this opportunity to further clarify the decisions of the magistrate and district court. Robert received, through Marcella's will, a specific devise of Marcella's interest in the stock portfolio. Thus, Robert was entitled to the other one-half share of proceeds of the co-owned stock, in the amount of $7,628.50. Robert was also entitled to the $9,601 in proceeds from the liquidation of her community-property share of Gordon's stock. However, because Marcella's stock portfolio was an asset of her estate, the proceeds from the liquidation of her interest were subject to abatement to pay the expenses associated with the administration of her estate. *See* § I.C. 15-3-902. Thus, despite Robert's interest as devisee in Marcella's stock portfolio, the proceeds received by Marcella's estate were completely abated to pay for estate administration expenses, as will be discussed in the section below.

Consequently, Robert's interest in proceeds from the liquidation of the stock portfolio estate was limited to his one-half co-ownership interest in the amount of $7,628.50. Thus, the district court did not err in affirming the magistrate on its determination of Robert's interest as co-owner.

## B. Allocation of Expenses

Robert's next claim of error involves the allocation of expenses incurred from the administration and distribution of assets from both estates. Both the magistrate and district court analyzed and allocated administration expenses to each estate separately.

### 1. Gordon's estate

First, regarding Gordon's estate, Robert claims that the court charged his distribution with an excessive proportion of the administration expenses. On March 7, 2007, the magistrate approved a payment of $13,831.35 for expenses incurred by the consolidated estate of Marcella and Gordon.[6] On remand from this Court, the magistrate reviewed the billing statements related to those expenses to try to ascertain the costs and fees attributable solely to reopening Gordon's estate and liquidating Gordon's stock. But, because the billing statements did not itemize the

---

[6] This payment was for $8,228.85 in attorney fees and $5,602.50 in personal representative fees.

7

fees incurred per estate--instead treating the estates as one consolidated estate--the court determined that it was "reasonable and equitable" to charge Gordon's estate with one-quarter of those fees, in the amount of $3,458. The court deducted that amount from Gordon's one-half share of the stock proceeds, resulting in a remaining estate value of $6,143. As sole beneficiary of Gordon's estate, the court found that Robert was entitled to a final distribution of $6,143.

Pursuant to Idaho probate laws, expenses incurred in the administration of an estate "shall be apportioned and charged against the different kinds of property in proportion to the relative value thereof, except that none of such expenses shall be apportioned or charged to the survivor's share of the community property." I.C. § 15-3-902(c). As discussed above, one-half of the stock proceeds were the community property of Marcella. Those proceeds were not available to be charged with the administration expenses of Gordon's estate. The other one-half of the stock proceeds were the property of Gordon's estate, subject to abatement to cover the expenses of administration. Therefore, Robert was only entitled to a distribution in the amount of $6,143 ($9,601 in stock proceeds minus $3,458 in administration expenses). The district court did not err in affirming the magistrate's decision on this issue.

To the extent that Robert challenges the $13,831.35 as an excessive expenditure, or his one-quarter share of that expense as unreasonable, we are not persuaded. Under Idaho law, the personal representative of an estate is entitled to compensation for services as well as reimbursement for attorney fees incurred in administering the estate. I.C. §§ 15-3-719, 15-3-720. Robert presents this Court with nothing more than his own conclusory assertions that the expenses were unreasonable. A general attack on the findings and conclusions of the trial court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue for consideration by this Court. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). Accordingly, we will not address Robert's unsupported claim on appeal.

8

### 2. Marcella's estate

Second, regarding Marcella's estate, Robert claims that the court improperly charged administration expenses against his entitlement to Marcella's interest in the stock proceeds. Under Marcella's will, Robert was named as the sole beneficiary of Marcella's home, investments, and stock portfolio. Marcella's other children were identified as the residuary beneficiaries of any remaining assets in her estate. After Marcella's death, the personal representative sold Marcella's personal property for a sum of $1,215. This amount constituted the entirety of Marcella's residuary estate. As of the date of the magistrate's decision on remand, the administration expenses for the consolidated estate totaled approximately $85,000.

Idaho Code § 15-3-902 sets forth the order in which assets must be utilized to pay expenses arising from the administration of an estate. Before the personal representative can use assets from a general or specific devise to satisfy expenses, all property within the residuary estate must first be exhausted. I.C. § 15-3-902(a). When deciding which assets to utilize, the personal representative need not give "any preference or priority as between real and personal property." *Id.* However, where one specific devise is utilized to cover administration expenses, any remaining specific devises shall be adjusted to ensure that each devisee receives the appropriate proportional share of their intended interest in the estate. I.C. § 15-3-902(d).

Here, the residuary of Marcella's estate, in the amount of $1,215, was quickly exhausted by the payment of administration expenses. The only remaining assets available to cover estate expenses were the two specific devises to Robert--the stock portfolio and the house. As previously established, pursuant to Marcella's will, Robert was entitled to the proceeds from the liquidation of Marcella's interest in the stock portfolio and the proceeds from the sale of the house. However, under probate law, because Robert was the intended devisee for both specific devises, the personal representative was permitted to utilize the proceeds from either the real property (house) or personal property (stock) devises to satisfy estate expenses without having to reallocate expenses among the two assets. *See* I.C. §§ 15-3-715, 15-3-902.

Because the house was not available for immediate sale, the personal representative properly utilized proceeds from the sale of Marcella's stock portfolio first. Exhaustion of this specific devise eliminated Robert's interest in the proceeds from the stock portfolio. Any remaining administration expenses would then have properly been deducted from Robert's

interest in the house.[7]  Thus, any interest that Robert had in the stock portfolio proceeds, as beneficiary under Marcella's will, was properly abated to cover administration expenses.  The district court did not err in affirming the magistrate's decision on this issue.

## III.

## CONCLUSION

Robert's interest in Gordon's stock portfolio was that of a beneficiary, not that of a co-owner.  Because the stock was community property, Robert was entitled to only one-half of the proceeds, $9,601, as sole beneficiary under Gordon's will.  This amount was properly reduced by expenses of administration for Gordon's estate in the amount of $3,458.  Robert is thus entitled to $6,143 from Gordon's estate.

Robert's interest in the stock portfolio held by Marcella was partly that of co-owner and beneficiary.  Robert was entitled to his one-half share, as co-owner, of proceeds in the amount of $7,628.50.  To the extent that Robert was entitled to proceeds from Marcella's stock interest, as beneficiary under her will, those proceeds were entirely abated by the estate's personal representative to pay for expenses of administration.  Thus, Robert is not entitled to any portion of Marcella's stock proceeds.

In sum, Robert is entitled to $6,143 from Gordon's estate and $7,628.50 from the liquidation of his co-owned stock, for a total amount of $13,771.50.  Accordingly, we affirm the district court's intermediate appellate decision affirming the magistrate's decision on remand.

Judge GRATTON and Judge HUSKEY **CONCUR**.

---

[7]  We note, however, that Robert's entitlement to any interest in the house was completely eliminated through the issuance of a federal forfeiture order dated December 13, 2014, stemming from Robert's federal criminal trial.

10